**SO ORDERED.**

**SIGNED this 21st day of July, 2010.**



_____
**LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FRANCISCO V. MARTINEZ | ) | Case No. 06-52009-LMC |
| and DIANA A. MARTINEZ , | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| | ) | |
| FRANCISCO V. MARTINEZ | ) | |
| and DIANA A. MARTINEZ, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Adversary No. 10-05001 |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| SERVICING, INC. and BRICE, VANDER | ) | |
| LINDEN & WERNICK, P.C. | ) | |
| | ) | |
| Defendants | ) | |

**ORDER DENYING DEFENDANT AMERICAN HOME MORTGAGE SERVICING,
INC.'S REQUEST FOR A JURY TRIAL AND FINDING CERTAIN OF THE
<u>PLAINTIFFS' CAUSES OF ACTION TO BE CORE PROCEEDINGS</u>**

1

On October 4, 2006, the above-captioned plaintiffs / debtors (the "Plaintiffs" or "Debtors") filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. On October 12, 2006, American Home Mortgage Servicing, Inc. ("AHMS") filed proof of claim number 3-1 against the Plaintiffs' estate asserting a secured claim in the amount of $7,401.50 (the "AHMS Claim"). On December 7, 2006, the Plaintiffs' chapter 13 plan was confirmed [Docket No. 22 in case number 06-52009]. On January 4, 2010, the Plaintiffs commenced the above-captioned adversary proceeding (the "AP") against AHMS and Brice, Vander Linden & Wernick, P.C. ("Brice Vander," and, together with AHMS, the "Defendants"). On April 5, 2010, the Plaintiffs filed an amended complaint (the "Amended Complaint") [Docket No. 20]. On April 19, 2010, AHMS filed its answer to the Amended Complaint and demanded a jury trial [Docket No. 21]; also on April 19, 2010, AHMS filed its statement regarding consent and demanded a jury trial (the "Jury Demand") [Docket No. 22].[1] Lastly, on May 18, 2010, the Plaintiffs filed their objection to AHMS's Jury Demand (the "Objection") [Docket No. 27]. For the following reasons, the court denies AHMS's Jury Demand and finds that certain of the Plaintiffs' causes of action are non-core.

In addition to filing the AHMS Claim, AHMS otherwise participated in the Debtors' bankruptcy on a number of occasions (prior to the AP being filed). On April 27, 2007, AHMS filed a motion for relief from stay alleging that the Plaintiffs were in default on their post-petition mortgage payments [Docket No. 28]. On May 22, 2007, the court signed an agreed order on the motion (the "Agreed Order") [Docket No. 34]. On March 19, 2009, AHMS filed a certificate of non-compliance alleging that the Debtors failed to comply with the terms of the Agreed Order [Docket No. 50]; on July 7, 2009, AHMS withdrew the March certificate [Docket No. 51]. On

---

[1] Brice Vander did not request a jury trial.

November 3, 2009, AHMS filed another certificate of non-compliance again alleging that the Plaintiffs failed to comply with the terms of the Agreed Order [Docket No. 52]. The Plaintiffs filed an objection to the November certificate [Docket No. 53] and soon thereafter filed the AP.

## A. The Pleadings

Since the Plaintiffs' allegations in the Amended Complaint are relevant to matters before the court, a summary of the Amended Complaint is important. The relationship between the Plaintiffs and the Defendants has to do with a note and mortgage on real property located at 115 Frances Jean Dr., San Antonio, TX 78223 (the "Property"). *Amended Compl.*, ¶ 6. According to the Plaintiffs, beginning in December 2007, AHMS has not applied post-petition mortgage payments that the Plaintiffs have made, has sought to collect money from the Plaintiffs that they do not owe, and has referred the account to its bankruptcy counsel to assert defaults in the Agreed Order. *Amended Compl.*, ¶ 16. As noted above, AHMS filed two certificates of default in this court alleging that the Plaintiffs did not comply with the terms of the Agreed Order. In December 2008, Brice Vander again notified the Plaintiffs that they were past-due on post-petition mortgage payments and Plaintiffs' counsel provided AHMS and its counsel with proof of payments. *Id.*, ¶ 17. In January 2009, Brice Vander once again notified the Plaintiffs that they were past-due on post-petition mortgage obligations and Plaintiffs' counsel provided proof of such payments. *Id.*, ¶ 18. This merry-go-round happened again in March 2009 (although, at this point in time AHMS had hired a different law firm: Balcom Law Firm, P.C.), *Id.*, ¶ 20-22, July and August 2009, *Id.*, ¶ 24-26, and September through November 2009. *Id.*, ¶ 27-29. While the March 2009 events between the Plaintiffs and AHMS were taking place, AHMS hired Brice Vander to foreclose on the Property and the Plaintiffs got a notice that AHMS' loan was accelerated and that the Property had been posted for a non-judicial foreclosure sale. *Id.*, ¶ 22. Apparently, the foreclosure never occurred in March. However, in a letter dated December 11,

2009, Brice Vander informed the Plaintiffs that AHMS had accelerated the loan and that the Property was posted for non-judicial foreclosure sale on January 5, 2010. *Id.*, ¶ 30.

Based on these facts, the Plaintiffs request the following relief:

I. Count I: Violation of the automatic stay and relief under 11 U.S.C. § 362(k). *Id.*, ¶¶ 32-35. The Plaintiffs ask for "judgment against Defendants for their actual damages, including costs and attorney's fees … [and] punitive damages." *Id.*, ¶¶ 34-35.

II. Count II: Recovery of property of the estate under 11 U.S.C. § 542. *Id.*, ¶¶ 36-37. The Plaintiffs ask that they be returned their "cashier's checks and money orders received but apparently not posted to the Debtor's mortgage account." *Id.*, ¶ 37.

III. Count III: Declaratory judgment pursuant to the Federal Declaratory Judgment Act in 28 U.S.C. §§ 2201-2202. *Id.*, ¶¶ 38-40. The Plaintiffs ask for a "declaration from the Court as to the status and amount due on their mortgage loan serviced by Defendant AHMS, as AHMS and its bankruptcy counsel have demanded vastly differing sums." *Id.*, ¶ 40.

IV. Count IV: Violation of the Fair Debt Collection Practices Act under 15 U.S.C. §§ 1692 *et. seq. Id.*, ¶¶ 41-44. Plaintiffs ask for "actual damages and reasonable attorney's fees and costs incurred … [and] statutory damages."

V. Count V: Violation of the Texas Debt Collection Practices Act under Tex. Fin. Code Ann. § 392.001 *et. seq. Id.*, ¶¶ 45-48. Plaintiffs "hereby sue for injunctive relief to prevent or restrain further violations of this chapter, and for their actual damages sustained as a result of the violations of this chapter. … [and] reasonable attorney's fees and costs." *Id.*, ¶ 48.

VI. Count VI: Request for a Temporary Restraining Order and Preliminary Injunction.

Ultimately, based on the allegations made in the Amended Complaint, the Plaintiffs requested:

4

    A. Judgment for their actual damages proven at trial, and such statutory damages as are imposed by law;

    B. A declaratory judgment as requested herein;

    C. An order directing Defendant AHMS to either properly apply Plaintiffs' mortgage payments that it might be holding, or turnover such payments to Plaintiffs;

    D. A specific injunction prohibiting Defendants from attempting to collect sums from Plaintiffs which they have paid;

    E. Pre and Postjudgment interest as provided by law;

    F. Reasonable attorney's fees and expenses incurred through the trial of this cause, and for any appeal taken therefrom;

    G. Costs of suit; and

    H. Such other and further relief to which Plaintiff may be justly entitled.

*Amended Compl.*, ¶ 49. On January 20, 2010, the court granted the Plaintiffs' request for a preliminary injunction (the "Injunction") [Docket No. 7] enjoining the Defendants from "directly or indirectly selling, attempting to sell, noticing another foreclosure sale, or foreclosing upon the real property located at 115 Frances Jean Drive, San Antonio, Texas 78223." *Injunction*, at 2.

    In its Jury Demand, AHMS not only argues that it has a right to a jury trial but it also states that it does not consent to such jury trial being held in the bankruptcy court. *Jury Demand*, at 2. More specifically, AHMS argues that it has a right to a jury trial as to the Plaintiffs' claims under the Fair Debt Collection Practices Act (the "FDCPA") and the Texas Debt Collection Act (the "TDCA"). *Id.* at 2-4. At the heart of AHMS's argument is that "Plaintiffs' causes of action seek money damages, thus the claims are properly characterized as legal." *Id.* at 3. AHMS notes that the Plaintiffs assert their claims under the FDCPA and the TDCA for the first time in the Amended Complaint, and the Plaintiffs seek only monetary relief in association with those claims. *Id.* at 2-3. Indeed, AHMS argues, "equitable relief is not even available under the

5

FDCPA." *Id.* at 3 (citations omitted). AHMS contends that the FDCPA and TDCA claims "resemble tort actions for collection violations, which were traditionally viewed as matters of law not equity." *Id.* at 4. Consequently, AHMS believes it "has a right to a jury trial with respect to these causes of action." *Id.* Additionally, AHMS asserts that the AP is not a core proceeding and does not consent to the bankruptcy court entering a final judgment in this matter. *Id.*, at 5-6. AHMS does not believe that the Plaintiffs' FDCPA and TDCA claims are core proceedings since they could have been raised outside of the bankruptcy case. *Id.* at 4-5. Lastly, AHMS "does not consent to an entry of final judgment by the Bankruptcy Court in this non-core proceeding." *Id.* at 6.

Not surprisingly, the Plaintiffs argue that AHMS does not a right to a jury trial in this AP. *See generally, Objection.* More specifically, the Plaintiffs note that AHMS "ignores these crucial facts – it filed a proof of claim and has participated in the Plaintiffs' bankruptcy case." *Objection*, at 3. The Plaintiffs then list the actions – as described above – that AHMS has taken in their bankruptcy case. *Id.* at 4. In short, the Plaintiffs assert that their "claims center around sums claimed by AHMS during this bankruptcy case, AHMS' attempts to collect such sums, and the Plaintiffs' dispute that such sums were even owed. All of these claims are 'closely intertwined with the claims allowance process.'" *Id.* at 5. Lastly, to the extent AHMS does not consent to a jury trial in *this* court, the Plaintiffs argue that it is forum shopping. *Id.* at 6. For all these reasons, the Plaintiffs ask that you overrule AHMS' Jury Demand.

**B. Analysis**

*Rights to a Jury Trial*

The analysis set forth by AHMS with respect to its Seventh Amendment jury rights is largely irrelevant in this case because, as the Plaintiffs argue, AHMS has voluntarily subjected itself to the bankruptcy court's equitable powers. As the Plaintiffs correctly argue in their Objection, this

court dealt with a very similar set of facts in *Alvarado v. Washington Mutual Bank, et. al.*, 2008 Bankr. LEXIS 815 (Bankr. W.D. Tex., Mar. 19, 2008) and held that Washington Mutual did not have a right to a jury trial. In *Alvarado*, the relevant facts were these: the Alvarados had filed for chapter 13 relief and Washington Mutual filed a proof of claim in the case. According to the Alvarados' complaint, Washington Mutual then paid off the debtors delinquent property taxes, amended its proof of claim to increase the debtors' monthly mortgage payment. Washington Mutual then filed a motion to lift the stay in the debtors' bankruptcy case, which eventually resulted in an agreed order being entered.

Almost a year later, Washington Mutual filed a notice of default alleging that the Alvarados failed to meet the terms of the agreed order. Despite an order of the court finding that the Alvarados were *not* in default of the agreed order, and that the automatic stay remained in place, Washington Mutual foreclosed on the Alvarados home anyway, then sought to recover a remaining deficiency from the foreclosure sale. Finally, the Alvarados alleged that their objection to Washington Mutual's proof of claim was never heard after the court dismissed it as moot when Washington Mutual erroneously informed the chapter 13 trustee that the stay had been lifted. Ultimately, as a result of Washington Mutual's actions in the bankruptcy case, the Alvarados sued alleging "violations of the automatic stay, violations of RESPA, breach of contract, negligence, gross negligence, intentional infliction of emotional distress, violations of both the Texas and federal debt collection practice acts, breach of fiduciary duty, and further request other declaratory relief." *Id.* at *5. Washington Mutual requested a jury trial.

In *Alvarado*, an essential finding in the court's ruling was that Washington Mutual, by filing a proof of claim in the Alvarados' chapter 13 bankruptcy case, had "invoked the core equity jurisdiction of this court[,] and [additionally] … the subject of the plaintiff's complaint is

7

intertwined with that jurisdiction." *Id.* at *7. The filing of a proof of claim is a key fact in determining whether a creditor has a right to a jury trial.

> The overwhelming majority of courts hold that the filing of a proof of claim is tantamount to the creditor's submission to the equitable jurisdiction of the bankruptcy court over matters concerning proofs of claim, such as the ones filed in this bankruptcy case. True, the Seventh Amendment preserves the right to a jury trial in 'all actions in which legal rights are to be determined.' The case law, however, could not be any clearer on the effect of Washington Mutual's filing of a proof of claim: '[O]nce a party invokes the core jurisdiction of the bankruptcy court by filing a proof of claim, that party has no Seventh Amendment right to a jury trial.'

*Id.*, at *6-7 (citation omitted).

In this case, AHMS has likewise filed a proof of claim and, moreover, has sought on a number of occasions to assert its rights over the Property in the Plaintiffs' bankruptcy case. In this court's mind, it is without question that AHMS has subjected itself to the equitable powers of this court. The only remaining issue is whether the subject of the AP is sufficiently intertwined with the AHMS Claim that the equitable jurisdiction of the court extends to the AP.

The court concludes that its equitable jurisdiction extends to all of the causes of action alleged in the Plaintiffs' Amended Complaint, including the FDCPA and the TDCA claims. The court agrees with AHMS that many of the Plaintiffs' claims are legal claims. As the court provided in *Alvarado*, "[t]he mere assertion of legal claims, however, does not itself require a separate jury trial over those claims if those claims are intertwined with the claims allowance process or other matters at the core of the bankruptcy process." *Alvarado*, at *9. Here, as in *Alvarado*,

> all claims asserted by the plaintiffs are based on [AHMS's] alleged actions taken to collect payment on its claim and to protect the collateral securing its claim. While these actions may also violate non-bankruptcy laws, and while the plaintiffs may also request monetary relief, the allegations are clearly intertwined with the core jurisdiction of this court -- that is, the claims allowance process and purported violations of the automatic stay. Because [AHMS,] by filing a proof of claim and by taking actions with respect to that claim, submitted itself to the

> equitable jurisdiction of this court, [AHMS] has waived its Seventh Amendment right to a trial by jury in this adversary proceeding.

*Id.*, at *9-10. For all these reasons, the court denies AHMS' Jury Demand.

*Core vs. Non-Core Proceedings*

As previously noted, AHMS also contends that the FDCPA and TDCA causes of action[2] are non-core and, moreover, AHMS does not consent to the bankruptcy court entering a final judgment on those claims. A determination of whether the FDCPA and TDCA claims are core is an entirely different matter than whether AHMS is entitled to a jury trial on those claims, however, the same set of facts are instructive in both analyses. Although AHMS does not contend that the court lacks jurisdiction to hear the FDCPA and TDCA claims, because the determination of the court's judicial power over those claims is intertwined with its jurisdiction, a review of bankruptcy courts' jurisdiction is useful.[3] *See Buena Vista Television, et. al. v.*

---

[2] AHMS' pleading is a little confusing. It begins with the statement that "Plaintiffs' Amended Complaint does not invoke core jurisdiction." *Jury Demand*, at 4. AHMS then appears to specify which of the Plaintiffs' causes of action it believes are non-core: "While Plaintiffs allege core jurisdiction under section 157(b), Plaintiffs' FDCPA and TDCPA claims do not fit within any of the sixteen core proceedings within the nonexclusive list of core proceedings in 28 U.S.C. § 157(b)(2)." *Id.* Then, AHMS seems to widen the scope of its contentions and makes more generalized arguments as to the Amended Complaint as a whole before citing support only as to the FDCPA and TDCA claims: "[t]he Amended Complaint could not arise 'only in the context of a bankruptcy case.' … The causes of action alleged by the Plaintiffs are rooted solely in federal statutory law and state law, ***not*** the Bankruptcy Code. Courts routinely hold that FDCPA claims are noncore. … Moreover, … the TDCPA [claim] … is also noncore." *Id.* at 5 (citations omitted). Ultimately, the court reads the Jury Demand as only arguing that the Plaintiffs' FDCPA and TDCA claims – as opposed to the Amended Complaint as a whole – are non-core causes of action. In point of fact, the court believes that AHMS would be hard pressed to successfully argue that Counts I or II of the Plaintiffs' Amended Complaint – dealing with 11 U.S.C. §§ 362(k) and 542, respectively – are non-core causes of action. Section 157(b)(2)(E) refers to "orders to turn over property of the estate;" and § 157(b)(2)(G) refers to "motions to terminate, annul, or modify the automatic stay[.]" To the extent requests for damages due to violations of the automatic stay under § 362(k) do not fall under subsection (G), such motions could conceivably fall into § 157(b)(2)(O). Moreover, Count III is directly related to the AHMS Claim and/or the Agreed Order that was entered into between the parties after AHMS filed its motion for relief from stay, which without question falls into § 157(b)(2)(G). For these reasons, the court analyzes AHMS' assertion that the "Plaintiffs' Amended Complaint does not invoke core jurisdiction" *only* with respect to the Plaintiffs' FDCPA and TDCA claims.

[3] AHMS makes no argument as to whether the FDCPA or TDCA claims fall within the court's 'related to' jurisdiction in this case. AHMS' only argument on this point is that the FDCPA and TDCA claims "are rooted solely in federal statutory law and state law, ***not*** the Bankruptcy Code. Courts routinely hold that FDCPA claims are noncore." *Jury Demand*, at 5 (citations omitted). However, because claims 'related to' the bankruptcy may also be proceedings arising in or arising under title 11, these labels are not determinative as to whether a claim is core or non-core. *See In re Ames Dep't Stores, Inc.*, 2005 Bankr. LEXIS 786, at *11-13 (Bankr. S.D.N.Y. 2005) (finding that the court had arising under, arising in and related to jurisdiction over the matter at issue in that case.); *see also Simmons v. Johnson, Curney & Fields, P.C. (In re Simmons)*, 205 B.R. 834, 841 n.3 (Bankr. W.D. Tex. 1997)

*Adelphia Commn's Corp., et. al. (In re Adelphia Commn's Corp.)*, 307 B.R. 404, 412 (Bankr. S.D.N.Y. 2004). In 28 U.S.C. § 1334, Congress gave the federal courts original but not exclusive jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In turn, the district courts have the power to refer to the bankruptcy courts those proceedings over which they have original but not exclusive jurisdiction - that is, those matters that arise under, or arise in or are related to cases under title 11. *See* 28 U.S.C. § 157(a); *see also U.S. Brass Corp. v. Travelers, Ins. Group (In re U.S. Brass Corp.)*, 301 F.3d 296, 303-304 (5th Cir. 2002); *In re Exide Technologies*, 544 F.3d 196, 205 (3d Cir. 2008). The first two types of proceedings are denominated as 'core' proceedings while the third are 'non-core' proceedings. *In re Exide*, 544 F.3d at 205. Although 28 U.S.C. § 157(b)(2) provides a non-exclusive list of the types of actions that constitute core proceedings, a proceeding that does not fall within one of § 157(b)(2)'s enumerated categories may still be considered core under section 157 if "it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re U.S. Brass*, 301 F.3d at 304; *Gilbane Bldg. Co. V. Air Sys. (In re Encompass Servs. Corp.)*, 337 B.R. 864, 871 (Bankr. S.D. Tex. 2006) (citing *U.S. Brass*, 301 F.3d at 304). If a matter is not a core proceeding, then it is by default a non-core proceeding. *In re M. Paolella & Sons, Inc.*, 85 B.R. 965, 969 (Bankr. E.D. Pa. 1988) (saying that bankruptcy proceedings can fall into one of three categories: "(1)

---

(discussing the three types of § 1334 jurisdiction (other than cases under title 11 jurisdiction) not in terms of concentric circles but intersecting circles); *but see Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) (saying that if a claim does not "invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding.") In any event, there is little doubt in this court's mind that it has jurisdiction over this AP. The Debtors' Plan provides that "[a]ll property of the estate, including any income, earnings, or other property which may become part of the estate during the administration of the case, shall not revest in the Debtor. Such property as may revest in the Debtor shall so revest only upon further Order of the Court or upon dismissal, conversion, or discharge." *Plan*, ¶ 9. Substantially similar language has been read to mean that the Debtors' case remains open until they receive a discharge (or the case is dismissed or converted). *Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, 404 B.R. 841, 854 (Bankr. S.D. Tex. 2009) vacated on other grounds by *Wilborn v. Wells Fargo Bank, NA (In re Wilborn)*, 2010 U.S. App. LEXIS 12606 (5th Cir. Tex. June 18, 2010).

core proceedings, which may be heard and resolved by the bankruptcy court... (2) noncore, related proceedings, which the bankruptcy court may hear and submit proposed findings of fact and conclusions to the district court...; and (3) noncore, unrelated proceedings, over which the bankruptcy court lacks any jurisdiction.").

The bankruptcy court has the judicial power to hear any matter that falls within the federal courts' bankruptcy subject matter jurisdiction, but has the unfettered judicial power to enter final orders only as to core matters. 28 U.S.C. § 1334(b); 28 U.S.C. §§ 157(a), (b)(1); *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569-570 (5th Cir. 1995). It is notable that

> [t]he distinction between 'core' and 'non-core' matters stems from the Supreme Court's decision in *Marathon*. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 6 B.R. 928 (Bankr. Minn. 1980), *rev'd*, 12 B.R. 946 (D. Minn. 1981), *aff'd*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982). In *Marathon*, the Supreme Court considered the scope and constitutionality of bankruptcy court jurisdiction and found that a non-Article III bankruptcy judge lacked the constitutional authority to decide a prepetition contract dispute based on state law where the defendant had not filed a proof of claim. Without precisely defining the boundaries of bankruptcy court jurisdiction, the Court distinguished between 'the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power,' and 'the adjudication of state-created private rights, such as the right to recover contract damages . . . .' 458 U.S. at 71. This distinction was later codified at 28 U.S.C. § 157, enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.

*JPMorgan Chase Bank v. Charter Communs. Operating, LLC (In re Charter Communs.)*, 409 B.R. 649, 653 (Bankr. S.D.N.Y. 2009). The bankruptcy court may enter final orders on non-core matters, but only with the consent of the parties. 28 U.S.C. § 157(c)(2). Absent that consent, the bankruptcy court must submit its findings and conclusions to the district court, in the form of a report and recommendation. The district court then enters any final order on the matter. 28 U.S.C. § 157(c)(1). In *Exide*, the Third Circuit laid out the procedure a court should take in evaluating whether a claim is core or non-core: "a court must first look to the illustrative list of 'core' proceedings found in § 157(b)(2). It must then conduct this Court's two-step test,

11

according to which a claim will be deemed core 'if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'" 544 F.3d at 206; *see also In re Wood*, 825 F.2d 97. However, "a court [should] 'not simply [] apply the terms of the statute but rather [] analyze the nature of the underlying claim to determine whether, given constitutional constraints on bankruptcy jurisdiction . . . , that claim should be considered a core proceeding.'" *Exide*, 544 F.3d at 207. The statute explicitly states that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." § 157(b)(3); *In re Wood*, 825 F.2d at 96 (citing to § 157(b)(3)). Notably, "[e]ach claim within the same cause of action must be analyzed claim by claim and each alone must satisfy this test in order to be considered a core proceeding. A single cause of action may include both core and non-core claims. The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'" *Id.* at 206.

In *Woods v. Woods (In re Woods)*, 825 F.2d 90, 97 (5th Cir. 1987), the Fifth Circuit defined the terms 'arising in' and 'arising under' thusly:

> [proceedings] 'arising under title 11' [are] 'those proceedings that involve a cause of action created or determined by a statutory provision of title 11.' The meaning of 'arising in' proceedings is less clear, but seems to be a reference to those 'administrative' matters that arise only in bankruptcy cases. In other words, 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

*Id.* at 96-97 (footnote omitted). Much later, in *In re Adelphia Commn's Corp., et. al.*, 307 B.R. 404, Judge Gerber extensively analyzed the meaning of jurisdiction that is 'arising in' or 'arising under' the Bankruptcy Code. In the *Adelphia* case, Judge Gerber was asked to determine whether an adversary proceeding commenced against the debtors was a core matter. The plaintiffs in the case (the "Copyright Owners") filed proofs of claim in the debtors' bankruptcy cases asserting a

12

right to royalty payment for pre-petition use of copyrights and/or copyright infringement and also sued the debtors in an adversary proceeding for (i) the payment of the debtors' post-petition copyright infringement, (ii) actual damages for copyright infringement, and (iii) an injunction prohibiting the debtors from further transmitting the Copyright Owners' programming. 307 B.R. at 411. Before plunging into its core/noncore analysis, the court noted that "[t]he relationship, and commonality of issues, as between each of such proofs of claim and this adversary proceeding … is apparent." *Id.* This nexus was later clarified thusly:

> the claims as set forth in the proofs of claim and in the adversary proceeding here were in all material respects identical. Both assert the Copyright Owners' rights in the programming the Adelphia Entities retransmitted; both discuss and rely upon the compulsory licensing scheme; both claim that the Adelphia Entities were obligated to pay the royalty to the Copyright Office on August 29, 2002, in a single payment for the Retransmissions Accounting Period; and both allege that the Adelphia Entities became copyright infringers and ineligible for the Compulsory License as a defense to liability for copyright infringement when the payment was not made on August 29 of that year. And except for the fact that an attempt to secure administrative expense priority over other creditors raises additional bankruptcy issues that are not also present in a pre-petition claim, the issues are in all material respects identical as well.

*Id.* at 418. The court went on to note that under Supreme Court precedent[4] – *Katchen v. Landy*, 382 U.S. 323, 15 L.Ed. 2d 391, 86 S.Ct. 467 (1966) and its progeny – when the Copyright Owners filed proofs of claim in the Adelphia cases, "they submitted to the equitable jurisdiction of this Court, especially with respect to the very subject matter of their claims." *Id. Katchen* noted that, after the filing of a proof of claim, "[t]his power to allow or to disallow claims includes 'full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based.'" *Id.* at 420 (quoting *Katchen*, 382 U.S. at 329 and citing to *Statutory Committee of Unsecured Creditors v. Motorola, Inc. (In re*

---

[4] Notably, as was the case in *Adelphia*, AHMS did not even cite to or discuss *Katchen* and its progeny. This deficiency is somewhat surprising in light of the fact that AHMS filed a proof of claim in the debtor's bankruptcy case *and* actively participated in the case via, *inter alia*, a motion to lift the stay.

*Iridium Operating LLC)*, 285 B.R. 822, 832 (S.D.N.Y. 2002)). For this reason alone, Judge Gerber said that the adversary proceeding was core. *Id.*

Additionally, Judge Gerber believed that the Copyright Owners' adversary proceeding was core for other reasons. Even if the Copyright Owners had not filed proofs of claim, because the adversary proceeding was seeking to "establish claims to the Adelphia estate *res* (and with priority over claims of other Adelphia creditors), at least under the facts here, would likewise present a core matter." *Id.* at 421. Additionally, Judge Gerber agreed with the debtors' argument that

> 28 U.S.C. § 157(b)(2)(B) does not distinguish between pre-petition and post-petition claims, and that it rather broadly provides core jurisdiction for the 'allowance and disallowance of claims against the estate.' That is not surprising, as claims of both types seek to recover from the bankruptcy estate res (a res over which, even under the old Bankruptcy Act, the bankruptcy court had summary jurisdiction), and post-petition claims not only seek to recover from that res, but with a priority over creditors who have only pre-petition claims. Such a conclusion is also consistent with the broad language used by the Second Circuit [that]"nothing is more directly at the core of bankruptcy administration … than the quantification of all liabilities of the debtor" --language that was understandably broad, as post-petition claims against the estate have an even greater effect upon creditor recoveries than pre-petition claims do.

*Id.* at 422-423. Thus, because the Copyright Owners were seeking to assert their rights against the debtors' res, regardless of the manner in which the adversary proceeding was described, the matter fell within the bankruptcy court's core jurisdiction.

For three reasons, the court concludes that, based on the facts before it in this case, the Plaintiffs' FDCPA and TDCA claims are core proceedings. First, the court notes that AHMS is correct in asserting that a number of courts hold that FDCPA and TDCA claims are not core proceedings. However, notwithstanding this authority, the court believes that the factual predicate underlying the Plaintiffs' FDCPA and TDCA causes of action against AHMS in this case are such that the claims invoke "a substantive right provided by title 11 or … could arise

14

only in the context of a bankruptcy case.'" *Exide*, 544 F.3d at 206; *In re Wood*, 825 F.2d 97. The allegations in the Complaint are born out of the Plaintiffs' belief that AHMS has violated the terms of the Agreed Order, and "the [c]ourt retains jurisdiction over the enforcement of its own orders." *Travelers Indem. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (U.S. 2009) ("Given the Clarifying Order's correct reading of the 1986 Orders, the only question left is whether the Bankruptcy Court had subject-matter jurisdiction to enter the Clarifying Order. The answer here is easy: as the Second Circuit recognized, and respondents do not dispute, the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *In re Ames Dep't Stores, Inc.*, 2005 Bankr. LEXIS 786, at *11 n. 23 (Bankr. S.D.N.Y. Apr. 29, 2005). The court's ability to enforce its own orders is especially relevant in light of the procedural posture of the Debtors' bankruptcy case at this juncture: although the Debtors' chapter 13 plan has been confirmed (and modified [Docket No. 35]), the Debtors have not yet finished paying their plan and received their discharge. In this district and division, the plan does not revest the property in the debtor upon confirmation, so an estate continues until completion of the case. Thus, the court retains jurisdiction over the bankruptcy case generally, *see Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, 404 B.R. 841, 854 (Bankr. S.D. Tex. 2009) *vacated on other grounds by Wilborn v. Wells Fargo Bank, NA (In re Wilborn)*, 2010 U.S. App. LEXIS 12606 (5th Cir. Tex. June 18, 2010), and especially insofar as the Debtors' or AHMS' compliance with a court order entered in the main bankruptcy case is concerned (here, the Agreed Order). Thus, because the FDCPA and TDCA claims are premised on whether this Court needs to enforce the Agreed Order, the causes of action are core.

    The court also believes the FDCPA and TDCA claims to be core due to the fact that the allegations underlying those claims are so intertwined with the facts underlying AHMS' motion to lift stay and the resulting Agreed Order. To be sure, the Plaintiffs could certainly sue AHMS

for violations of the FDCPA and TDCA outside of the ambit of this bankruptcy case. However, similar to the case faced by Judge Gerber in *Adelphia*,[5] the *bases* for the AP here are intimately intertwined with a core bankruptcy function: AHMS' motion for relief from stay, which asserted that the debtors had defaulted on three post-petition monthly mortgage payments. *Id.*, ¶ 14. According to the Debtors, "[t]he Agreed Order did not provide for the curing of any postpetition arrearage sum because the Debtors were current as of the time of entry of such Order. With respect to future payments, the Agreed Order provided that '[b]y June 1, 2007, Debtors shall remit directly to Movant the regular post-petition monthly mortgage payment pursuant to the Note and Deed of Trust referred to in the Motion.'" *Id.*, ¶ 15. AHMS thereafter filed two certificates of non-compliance and notices of termination of the stay due to the Plaintiffs' non-compliance with the Agreed Order. *See Docket Nos. 50, 51, and 52 in Main Case No.* 06-52009. The bases of the FDCPA and TDCA claims in the AP are that the Plaintiffs' alleged payments to AHMS have either not been accepted or not counted and, because of AHMS' failure to account for these payments, AHMS is mistakenly seeking to foreclose on the Debtors' home. The payments at issue in the AP – that the Plaintiffs allege were made and that AHMS alleges were not made – relate directly to the terms of the Agreed Order, which resulted from AHMS' motion to lift the stay, which, in turn, explicitly touches on a core bankruptcy matter under § 157(b)(2)(G). In other words, the obligations that AHMS assert were not met and the money it is trying to collect as a result of the Debtors' failure to make the agreed-upon payments, stem from a post-petition agreement entered into by the parties as a result of AHMS' motion to lift the stay; the terms of the Agreed Order, as opposed to the pre-petition mortgage agreement, are the bases

---

[5] The court recognizes that *Adelphia* is not on all fours with the analysis applied here because, unlike the situation before the court in *Adelphia*, the facts underlying the debtors' FDTPA and TDCA claims are not intertwined with AHMS' proof of claim, but out of AHMS' motion to lift stay. However, the analysis undertaken by Judge Gerber, and his finding that the adversary proceeding in that case was so intertwined with the proofs of claim that the relief sought in the AP was core, is relevant here.

for the Plaintiffs' FDCPA and TDCA claims against AHMS. Indeed, AHMS notified the Debtors of their alleged default *in the main bankruptcy case* by filing certificates of non-compliance. It is clear to this court that the actions taken by AHMS that form the bases for the AP are all so intertwined with the court's core bankruptcy power of determining whether to lift the automatic stay that all the claims in the Complaint, including the Debtors' FDCPA and TDCA claims, are core proceedings.

Lastly, the court believes that the claims asserted in the AP are core because they are deeply related to this bankruptcy case's *raison d'etre*: the Debtors' wish to keep their home. *Complaint*, at ¶ 1 ("The primary reason the Debtors filed their bankruptcy petition was to avert a foreclosure against their homestead"). The causes of action in the AP, including the FDCPA and TDCA claims, all center around the Debtors' relationship with AHMS, a creditor that (i) is being paid through the plan for its pre-petition claims, (ii) filed a proof of claim, and (iii) participated in the bankruptcy by seeking relief from the automatic stay, which was resolved by the Agreed Order. If the automatic stay is terminated due to the Debtors' alleged failure to comply with the Agreed Order, as AHMS has contended on at least two occasions, the reason for Debtors' bankruptcy case would effectively be moot. For this reason, a finding of core power as it relates to the AP generally, and the FDCPA and TDCA claims particularly, is appropriate. *See JPMorgan Chase Bank v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 409 B.R. 649, 652 (Bankr. S.D.N.Y. 2009) (holding that a lawsuit by a creditor requesting a declaratory judgment that the debtor had breached the parties' pre-petition loan contract was core because the outcome of the lawsuit directly impacted the debtor's ability to confirm its chapter 11 plan). The *Charter Commc'ns* case was a pre-packaged bankruptcy case in which the debtors filed their disclosure statement and plan on the day the case was filed. 409 B.R. at 651. Central to the plan was the "reinstatement of billions of dollars in debt, including the reinstatement of

indebtedness under a senior credit facility in which JPMorgan Chase Bank ('JPMorgan') is the administrative agent." *Id.* JPMorgan, who had *not* filed a proof of claim in the debtors' cases, sued the debtors and asked for a declaratory judgment that the debtors had defaulted on the credit facility prior to filing for bankruptcy, which would preclude the debtors from reinstating the facility. *Id.* In other words,

> [i]f prepetition defaults are found to have existed under the Credit Agreement, Debtors would not be able to reinstate the Credit Agreement as contemplated in their plan of reorganization unless Debtors could cure such defaults before reinstating the debt. Given the nature of the alleged breaches of the Credit Agreement here, the relief sought by JPMorgan in this adversary proceeding has the potential to block reinstatement of the Credit Agreement and thereby block confirmation of the Debtors' plan of reorganization.

*Id.* at 652-653. Similar to the situation in *Charter Commc'ns*, the outcome of the AP directly impacts the Debtors' ability to utilize the bankruptcy code to restructure its debts and successfully emerge in a healthier financial situation. Although, unlike the case in *Charter Commc'ns*, the Debtors' plan has already been confirmed in this case, however, the purpose Debtors' filing for chapter 13 relief was to keep the home at issue in the AP. The court believes that the reasoning of the *Charter Commc'ns* case is applicable here. Consequently, the court finds that the FDCPA and TDCA claims are core proceedings in the context asserted here.

## C. Conclusion

For the reasons stated above, AHMS' Jury Demand is denied in full. AHMS waived its right to a jury trial when it subjected itself to the equitable jurisdiction of this court by: filing a proof of claim in the Plaintiffs' bankruptcy case, filing its motion to lift the automatic stay, filing its various notices of default against the debtors/Plaintffs. Additionally, the court rules that the Plaintiffs' FDCPA and TDCA claims are core matters.

# # #